RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0771-MR

JERVIS MIDDLETON                                            APPELLANT


                   APPEAL FROM FAYETTE CIRCUIT COURT
v.             HONORABLE KIMBERLY N. BUNNELL, JUDGE
                     ACTION NO. 21-CI-00873


LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT;
LEXINGTON-FAYETTE COUNTY
COUNCIL AS AN ENTITY AND BY
AND THROUGH ITS MEMBERS;
AND MAYOR LINDA GORTON                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, GOODWINE, AND A. JONES, JUDGES.

CETRULO, JUDGE: Appellant Jervis Middleton ("Middleton") appeals a May

2023 Fayette Circuit Court Order affirming a decision by Appellee Lexington-

Fayette Urban County Government ("LFUCG")[1] to terminate his employment as a police officer with the Lexington Police Department ("Lexington PD") for misconduct. After review, we affirm.

## BACKGROUND

Middleton, a Black police officer, served in the Lexington PD for 13 years and attained the rank of sergeant. He served as a negotiator, firearms and defensive-tactics instructor, public information officer, and member of the Honor Guard. On July 6, 2020, the Lexington PD issued a personnel order placing Middleton on administrative assignment – prohibiting him from exercising police authority, revoking his arrest powers, and among other things, prohibiting him from wearing a police uniform or insignia – pending an investigation by the Lexington PD Public Integrity Unity ("PIU").

On August 5, 2020, the Lexington PD filed[2] a "Formal Complaint" against Middleton, also referred to as a Form 111. The Formal Complaint alleged Middleton disseminated confidential police communications to Sarah Williams

---

[1] LFUCG is also representing the other appellees in this matter, Lexington-Fayette County Council as an entity and by and through its members and Mayor Linda Gorton. Thus, for clarity, we will refer to the appellees collectively as "LFUCG."

[2] PIU notarized and recorded the Formal Complaint. Also, the September 28, 2020, Lexington PD Memorandum referred to that Formal Complaint as "filed."

("Williams")[3] and "ma[de] disparaging comments about the [Lexington PD] and its personnel."[4]  Two days later, on August 7, the Lexington PD issued a second personnel order suspending Middleton with pay.

On September 28, 2020, a PIU investigator issued a formal memorandum to the Lexington PD Chief that provided "a synopsis of the investigation" against Middleton.  This memorandum detailed seven "incidents of concern" that included messages sent between Middleton and Williams, and summarized interviews with Lexington PD officers and Middleton.

On October 6, 2020, the Lexington PD Chief informed Middleton that he was submitting the misconduct charge to the Disciplinary Review Board ("Review Board").  On October 15, 2020, the Review Board met with Middleton and subsequently recommended terminating Middleton's employment with the Lexington PD.  That same day, the Lexington PD Chief informed Middleton that he agreed with the Review Board's recommendation.

---

[3] Williams is Middleton's cousin and a local community organizer.  She led the 2020 police-accountability protests in Lexington, Kentucky, following the highly publicized murder that year of George Floyd in Minneapolis, Minnesota.  Lexington PD arrested Williams during a protest, but after a trial, she was found guilty of only disorderly conduct.  During the course of the investigation into Williams, Lexington PD confiscated her cell phone and found messages to/from Middleton.  Those messages are the root of the accusations against him in this action.

[4] Although referenced in detail within the constitutional analysis below, a full factual recitation of Middleton's comments and text messages is not necessary for our review.

On December 10, 2020 – after receiving the charge from the Lexington PD Chief – the LFUCG Department of Law filed the charges with the LFUCG Council Clerk. These charges included the misconduct charge previously discussed (Count I) and two additional charges: an alleged violation of an operational rule regarding the dissemination or interference with written or electronic information (Count II), and an alleged violation of an operational rule regarding possible untruthfulness during an investigatory interview (Count III). That same day, Lexington PD changed Middleton's suspension to "without pay."

In preparation for the hearing, LFUCG Council confirmed that the Lexington Mayor ("Mayor") would preside over the hearing. Middleton filed a motion to dismiss, alleging regulatory, statutory, and constitutional violations.[5] Relevantly, in that motion, Middleton challenged the timing of the hearing ("75-day argument") and the Lexington PD's ability to discipline him for protected speech. Also, Middleton entered a witness and exhibit list that included examples of complaints against Lexington PD officers and their resulting discipline. LFUCG opposed Middleton's motion.

---

[5] Middleton argued: (1) LFUCG violated Kentucky Revised Statute ("KRS") 15.520 by not holding a hearing within 75 days of Middleton being formally charged and suspended; (2) two charges submitted to LFUCG Council were improper because they were not contained in the Formal Complaint; (3) not all the allegedly violated disciplinary procedures had been formally adopted and therefore "no officer could be disciplined under these rules"; (4) the Lexington PD violated KRS 15.520 which requires 48 hours of written notice to be delivered to the officer before he is interrogated; and, (5) Middleton cannot be disciplined for federally protected speech.

-4-

On February 17, 2021, the day before the hearing, the Mayor denied Middleton's motion to dismiss. The Mayor excluded 20 of Middleton's 21 disciplinary examples and limited the parties to three hours each (which included time spent cross-examining opposing parties' witnesses) during the hearing. The Mayor also prohibited Middleton from discussing the arguments raised and denied in his motion to dismiss, including the 75-day argument and his First Amendment argument.

On February 18, 2021, the LFUCG Council held Middleton's hearing. That same day, the LFUCG Council issued its Findings, Determination and Holding (the "February 2021 Order"). The February 2021 Order found Middleton guilty of two of the three counts: (I) misconduct and (II) violating the operational rule regarding dissemination or interference with written or electronic information. The LFUCG Council recommended termination of Middleton's employment. Middleton appealed to the Fayette Circuit Court. On May 31, 2023, the circuit court affirmed the decision of the LFUCG Council. Middleton again appealed.

**STANDARD OF REVIEW**

An "officer who is found guilty by any hearing authority of any charge, may bring an action in the Circuit Court[.]" KRS 15.520(8)(a). The circuit court must then conduct a "quasi trial *de novo.*" *Stallins v. City of Madisonville*, 707 S.W.2d 349, 350 (Ky. App. 1986). It may consider only a transcript of the

administrative hearing and any additional witness testimony the employee presents. *Id*. (citation omitted). The circuit court must determine whether the administrative hearing authority "acted *arbitrarily* in deciding whether the employee violated the rules and regulations of the police department"; it may not make findings regarding a penalty or punishment. *Id.* at 350-51 (emphasis added) (citation omitted). Under these circumstances,[6] arbitrariness equates to "whether the action was taken in excess of granted powers, whether affected parties were afforded procedural due process, and whether decisions were supported by substantial evidence." *Landrum*, 599 S.W.3d at 792 (quoting *Louisville Metro Health Dep't v. Highway Manor Ass'n, LLC*, 319 S.W.3d 380, 383 (Ky. 2010)). "As an appellate court, we stand in the shoes of the circuit court and review the [Mayor's] decision for arbitrariness." *Id*. (quoting *Martin Cnty. Home Health Care v. Cabinet for Health & Fam. Servs*., 214 S.W.3d 324, 326 (Ky. App. 2007)).

Next, we review the circuit court's substantive determinations for clear error. *Stallins*, 707 S.W.2d at 351 (citing Kentucky Rule of Civil Procedure 52.01). A decision is clearly erroneous if it is unsupported by substantial evidence. *Thurman v. Meridian Mut. Ins. Co.*, 345 S.W.2d 635, 639 (Ky. 1961). "Once a

---

[6] Here, when assessing arbitrariness, we apply the substantial evidence test because the mayor's actions stemmed from an adjudicatory hearing, as opposed to a non-adjudicatory, quasi-legislative hearing. *See Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 792-93 (Ky. 2019).

reviewing court has determined an agency's decision is supported by substantial evidence, the court must then determine if the agency applied the correct rule of law to the factual findings in making its determination. If so, the agency's final order is upheld." *Wasson v. Ky. State Police*, 542 S.W.3d 300, 302-03 (Ky. App. 2018) (citing *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 410 (Ky. App. 1994)). However, matters of law – such as statutory construction and interpretation – are subject to *de novo* review. *Id*. (citing *Halls Hardwood Floor Co. v. Stapleton*, 16 S.W.3d 327, 330 (Ky. App. 2000)).

> In construing a statute, it is fundamental that our foremost objective is to determine the legislature's intent in enacting the legislation. "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Richardson v. Louisville/Jefferson County Metro Government*, 260 S.W.3d 777, 779 (Ky. 2008). Further, we construe a "statute only as written, and the intent of the Legislature must be deduced from the language it used, when it is plain and unambiguous. . . ." *Western Kentucky Coal Co. v. Nall & Bailey*, [14 S.W.2d 400, 401-02 (Ky. 1929)]. Therefore, when a statute is unambiguous, we need not consider extrinsic evidence of legislative intent and public policy. [*Cnty. Bd. of Educ. Jefferson Cnty. v. S. Pac. Co.*, 9 S.W.2d 984, 986 (Ky. 1928)]. However, if the statutory language is ambiguous, we will look to other sources to ascertain the legislature's meaning, such as legislative history and public policy considerations. *MPM Financial Group Inc. v. Morton*, 289 S.W.3d 193, 198 (Ky. 2009). Further, we "read the statute as a whole, and with other parts of the law of the Commonwealth, to ensure that our interpretation is logical in context." *Lichtenstein v. Barbanel*, 322 S.W.3d 27, 35 (Ky. 2010).

*Pearce v. Univ. of Louisville, by & through its Bd. of Trs.*, 448 S.W.3d 746, 749 (Ky. 2014).

## ANALYSIS

On appeal, Middleton argues (A) the Mayor improperly limited his defense to three hours *and* she exceeded her authority by making that determination; (B) he did not receive a hearing within the 75-day statutory window *and* the Mayor improperly prevented him from raising that argument at his disciplinary hearing; (C) the Mayor improperly limited his disciplinary examples *and*, as a result, the LFUCG Council did not base its disciplinary determination on his complete, statutorily permissible defense; (D) and, lastly, that his termination was based on speech protected by the First Amendment.[7]  Consequently, he claims, the circuit court erred in affirming the LFUCG Council's decision.

Here, Middleton's statutory arguments are rooted in KRS 15.520, colloquially known as the police officers' Bill of Rights.  *Schell v. Young*, 640 S.W.3d 24, 40-41 (Ky. 2021) (citing *Pearce*, 448 S.W.3d at 747).  KRS 15.520 offers due process protections to police officers subject to disciplinary actions from either internal or external complaints.  *See Pearce*, 448 S.W.3d at 748.  Included in

---

[7] Middleton also argues that LFUCG's internal disciplinary/investigatory process conflicts with the due process rights allocated to police officers in KRS 15.520(7).  While we appreciate the merit of that argument, that is beyond the scope of this review because, in part, that argument was not raised below.  We, as an appellate court, are a court of review, and there can be no possible error to review when the issue was not raised before a previous adjudicating body.  *See Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (citation omitted).

those administrative due process rights is the right to a hearing. KRS 15.520(7).

Middleton accuses the Mayor and/or LFUCG Council of violating that subsection.

Relevantly, KRS 15.520(7) states:

> Unless waived by the charged officer in writing, a hearing shall be conducted by the officer's appointing authority[8] to determine whether there is substantial evidence to prove the charges and to determine what, if any, disciplinary action shall be taken if substantial evidence does exist. In conducting a hearing, the following administrative due process rights shall be recognized and these shall be the minimum rights afforded any officer charged, except as otherwise agreed to in writing by the officer and the employing agency:
>
> . . .
>
> > (g) The accused officer shall be allowed to present witnesses and any documentary or other relevant evidence the officer wishes to provide to the hearing authority, and may cross-examine all witnesses called by the charging party;
> >
> > (h) If any officer who has been suspended with or without pay is not given a hearing as provided by this section within seventy-five (75) days of any charge being filed pursuant to this section, the charge shall be dismissed with prejudice and shall not be considered by any hearing authority and the officer shall be reinstated with full back pay and benefits;
> > . . .

---

[8] Middleton's brief states, "The statute appears to interchange 'hearing authority' and 'appointing authority.' These both mean the LFUCG Council in this instance." LFCUG's' brief does not contest that statement.

(j) The failure to provide any of the rights or to follow the provisions of this section may be raised by the officer with the hearing authority. The hearing authority shall not exclude proffered evidence based on failure to follow the requirements of this section but shall consider whether, because of the failure, the proffered evidence lacks weight or credibility and whether the officer has been materially prejudiced[.]

Middleton asserts that he had the right to present all of his defenses and arguments directly to the LFUCG Council as a whole, but the Mayor's pre-hearing rulings improperly limited his arguments. Conversely, LFUCG asserts the Mayor did not exceed her authority, and KRS 15.520 does not require LFUCG Council *as a whole* to decide every facet of a disciplinary action. In a practical sense, LFUCG argues that requiring the LFUCG Council to decide each legal challenge by motion and vote is "untenable and unworkable" across the state.

A.    **Three-Hour Defense**

Middleton argues the three-hour restriction placed on his defense was improper *and* the Mayor exceeded her authority by making that finding. He makes a general argument that the Mayor's limitation was "extremely restrictive" and "denied [him] his right to a fundamentally fair hearing." He asserts that a "full and fair hearing would have taken several days," but he does not argue that the three-hour restriction was arbitrary or in violation of any specific ordinance or statute.

Originally, the hearing was scheduled for five hours, but Middleton objected. The LFUCG Council discussed his objection at their January 28, 2021 meeting, and reconsidered. While the Mayor was the ultimate factfinder on this issue, the timing was discussed and agreed upon by the LFUCG Council. In a letter sent to the parties in response to Middleton's time-restriction objection, the Mayor wrote:

> At its meeting on January 28, the [LFUCG] Council agreed to a format of six (6) hours for proof with an additional one (1) hour for opening/closing statements (15 minutes opening for each party and 15 minutes closing for each party). Enclosed is a schedule that allows for breaks (15 minutes) and for a dinner break (30 minutes). These breaks will be on scheduled intervals and will not count against the parties' allotted time of 6 hours for proof and 1 hour for opening/closing statements.
>
> I have prior experience as both a Council Member and Mayor with police disciplinary hearings. Based upon same, it is my belief that the time allotted by the Council, with the addition of reasonable breaks, provides the parties and counsel with sufficient time to make their presentation of proof and arguments concerning the charges that will be heard on February 18.
>
> On February 2, 2021, LFUCG Counsel filed with the [LFUCG] Council's Clerk a Response to Officer Middleton's (1/26/21) Objections. Included in this Response was reference and discussion of KRS Chapter 67A, the LFUCG's Charter, the Collective Bargaining Agreement and KRS 15.520 (Kentucky's Police Officer Bill of Rights) of which I have prior experience. Although I am not a lawyer, I also have prior experience with the arguments presented and I have reviewed and given due consideration to the objections (1/26/21) and response

-11-

(2/2/21).

> I have given additional consideration to the revised allotment of time set by the Council and will utilize the schedule (enclosed) in presiding over and conducting the hearing (6 hours for proof and 1 hour for opening/closing statements).

Clearly, the Mayor's decision to restrict Middleton to a three-hour defense was not arbitrary; in fact, it was well-reasoned, deliberate, and supported by substantial evidence. The circuit court found the Mayor's decision to restrict Middleton's defense "appropriate," and that conclusion by the circuit court is not clearly erroneous because it is supported by substantial evidence.

Additionally, Middleton argues the Mayor exceeded her authority by making that time restriction ruling, and yet again, Middleton does not point to any specific statute or ordinance that would prohibit the Mayor from making that ruling. In fact, the Mayor's actions here are consistent with the broad powers granted to her position by the Lexington-Fayette County Code of Ordinances.[9]

Middleton's disciplinary hearing was a special meeting of the LFUCG Council. The parties agree that the Mayor is the presiding officer of the LFUCG Council meetings. *See also* Lexington-Fayette County Code of Ordinances Art. 4,

---

[9] https://codelibrary.amlegal.com/codes/lexingtonfayettecoky/latest/lexingtonfayettecoky_code/0-0-0-1. This Court may take judicial notice of these public documents. *Fox v. Grayson*, 317 S.W.3d 1, 18 n.82 (Ky. 2010) (citing *Polley v. Allen*, 132 S.W.3d 223, 226 (Ky. App. 2004)) (The Court may "properly sua sponte consider documents available to the general public.").

-12-

§ 4.07 ("The presiding officer of the [LFUCG] Council shall be the Chief Executive Officer of the Merged Government, to be known as the 'Mayor.' As presiding officer, the Mayor shall have a vote on all matters, substantive and procedural, only in the case of a tie vote among the elected members of the Council. In no case shall the Mayor, as presiding officer, be denied the right of introducing, presenting, or otherwise inserting into the record of the Council any resolution, recommendation, or proposed ordinance.").

> Among other privileges, the Mayor:
>
> A.   Shall preside at all Council meetings, but vote only in the case of a tie, as provided in Article Four of this Charter.
>
> . . .
>
> D.   May call special meetings of the Council as provided in Article Four of this Charter.
>
> . . .
>
> F. May recommend to the Council such measures, resolutions or ordinances relative to the affairs of the Merged Government as may be deemed necessary.

Lexington-Fayette County Code of Ordinances, Article 5, § 5.04.

Reading the ordinance as a whole, the Mayor is granted broad powers, rights, and duties. We find no ordinance prohibiting the Mayor from putting time limitations on disciplinary hearings. Therefore, the Mayor did not exceed her authority by limiting Middleton's defense to three hours.

## B.    75-Day Argument

Middleton argues the circuit court erred by failing to enforce KRS 15.520(7)(h)[10] and the statute's 75-day window for a disciplinary hearing.  The parties agree that KRS 15.520(7)(h) is binding and that the 75-day due process clock *stops* on Middleton's hearing date, February 18, 2021.  However, the parties disagree as to what date *starts* that 75-day clock.

Middleton argues the clock starts after an officer has been suspended, formally charged, and those charges are "filed."  He asserts that LFUCG violated KRS 15.520(7)(h) because the 75-day clock should have started by August 7, 2020, or, at the latest, October 15, 2020.  On August 5, PIU recorded and "filed" the Formal Complaint internally with the Lexington PD and on August 7, Middleton was suspended with pay.  Therefore, he argues, the statutory requirements had been met by August 7, *195 days* before the hearing.  Alternatively, on October 15, the Review Board recommended terminating Middleton's employment, and the Lexington PD Chief accepted that recommendation.  Accordingly, Middleton argues, the statutory requirements had also been met by October 15, *125 days* before the hearing.  Using either date –

---

[10] "If any officer who has been suspended with or without pay is not given a hearing as provided by this section within seventy-five (75) days of any charge being filed pursuant to this section, the charge shall be dismissed with prejudice and shall not be considered by any hearing authority and the officer shall be reinstated with full back pay and benefits[.]"

August 7 or October 15 – Middleton argues that LFUCG did not hold his hearing within 75 days of him being suspended, formally charged, and those charges being filed; therefore, he should be "reinstated with full back pay and benefits" pursuant to the statute.

Distinctively, LFUCG argues the statutory clock started on December 10, 2020 – 70 days before the hearing – when disciplinary charges were filed with the LFUCG Council Clerk (and he was suspended without pay).[11] LFUCG argues the "filing" required by the statute is filing with the clerk of the legislative body – here, the LFUCG Council Clerk – not the internal "filing" that PIU performed when it recorded the Formal Complaint. Focusing on this "filing" date, LFUCG cites to two unpublished opinions from this Court, *Cromer v. Lexington-Fayette Urban County Government*, No. 2008-CA-000698-MR, 2009 WL 961102 (Ky. App. Apr. 10, 2009), and *Artrip v. City of Hopkinsville*, No. 2009-CA-000822-MR, 2011 WL 336643 (Ky. App. Feb. 4, 2011).[12]

---

[11] KRS 15.520(1)(c) defines "disciplinary action" for officers as including "suspension without pay" but *not* "suspension with pay." LFUCG argues that this statutory discrepancy should be relevant to our review, but we do not agree. The statute in question does not make a distinction between the two types of suspension – "any officer who has been suspended with or without pay" – therefore, we do not find a discussion distinguishing the two types of suspension necessary under these circumstances.

[12] Middleton also argues a federal case – *Artrip v. City of Hopkinsville*, No. 5:07-CV-10-R, 2008 WL 77715, (W.D. Ky. Jan. 4, 2008) – is helpful for our analysis, but we do not agree. This federal case is unpublished, and this Court discussed and dismissed it in the state *Artrip* case. Additionally, as this Court stated, we are not "bound by a federal court's interpretation of Kentucky law." *Artrip*, 2011 WL 336643, at *3.

KRS 15.520(7)(h) states, "[i]f any officer who has been suspended with or without pay is not given a hearing as provided by this section within seventy-five (75) days of *any charge being filed* pursuant to this section . . . ." (Emphasis added.)  We agree with the parties that this statute is ambiguous as to what constitutes "filing."  As such, we must look outside the statute for clarification to find the legislature's intent.  *See MPM Fin. Grp. Inc. v. Morton*, 289 S.W.3d 193, 198 (Ky. 2009).  With no published precedent specifically on point, we turn to the unpublished caselaw cited by the parties for persuasive, not binding, assistance.  Kentucky Rule of Appellate Procedure ("RAP") 41.

In *Cromer*, this Court affirmed the circuit court's finding that the "filing" day was "when such charges were filed with the clerk of the legislative body."  *Cromer*, 2009 WL 961102, at *3.  In *Cromer*, the circuit court found that

> [w]hile KRS 15.520 does not indicate how such charges are filed, KRS 95.450(2) does.  KRS 95.450(2) provides that "[a]ny person may prefer charges against a member of the police . . . by filing them with the clerk of the legislative body who shall immediately communicate the same to the legislative body."

*Id*.

This Court found the circuit court's reasoning to be "sound and as representing the proper interpretation of [KRS 15.520(7)(h)[13]]."  *Id.*  In *Cromer*,

---

[13] *Cromer* references "KRS 15.520(1)(h)(8)"; however, the 2015 legislative changes to the statute renumbered that subsection to KRS 15.520(7)(h).

this Court did not overtly state that KRS 15.520(7)(h) was ambiguous but did determine proper interpretation of KRS 15.520 required consideration of KRS 95.450. *See id.* Thus, *Cromer* set the "filing" date as the day the charges are filed with the "clerk of the legislative body." *Id.*

Similarly, in *Artrip*, this Court relied on KRS 95.450 to interpret KRS 15.520 and determined the "filing" date was the day charges were filed with the "clerk of the legislative body." *Artrip*, 2011 WL 336643, at *3 n.7. In *Artrip*, the police officer argued that his suspension date should trigger the statutory requirement for a timely hearing, but this Court disagreed.

> Considering the statutory scheme as a whole, we conclude that it was incumbent upon [the police chief] to prefer charges against [the police officer] within a reasonable time after suspending him; the preferring of those charges within a reasonable time after the suspension, not the suspension itself, would begin the sixty-day period identified in [KRS 15.520(7)(h)].

*Id.* at *3 (footnote omitted).

Further, the Court explained

> [the police chief] would prefer such charges in the same manner as any person may file written charges against a police officer for misconduct. KRS 95.450(2). A complainant prefers charges by "filing them with the clerk of the legislative body[.]" *Id.* [The police chief's] suspension of [the police officer] was not the equivalent of preferring charges against him.

*Id.* at *3 n.7.

As such, this Court's persuasive precedent indicates that the countdown to the hearing did *not* begin on the officer's initial suspension date, but rather, the statutory countdown to the hearing began the day the charges were preferred to the clerk of the legislative body. *See id.*; *Cromer*, 2009 WL 961102, at *3. Here, LFUCG points out that the clerk of the legislative body is the LFUCG Council Clerk. This interpretation is logical as the preferring of the charges then places the hearing authority on notice that the 75-day clock has begun and affords both the officer and legislative body time to prepare for a due process hearing.

Middleton argues *Cromer* and *Artrip* relied on KRS 95.450 "to justify allowing a municipality to extend the time for holding a hearing[,]" but that such reliance is no longer permissible. Middleton argues that "[i]n 2015 the Kentucky legislature clarified how KRS 15.520 should be interpreted." The 2015 legislative changes, he argues, did not define "filing of the charge," but *did* expressly state that KRS 95.450 "shall not apply" to disciplinary actions such as the one currently on review, citing KRS 15.520(9). LFUCG disagrees and argues the 2015 and 2018 updates to KRS 15.520 did not alter the statute in any way relevant here. Instead, LFUCG argues, "[t]he legislative changes found in KRS 15.520(9) in 2015 were simply an attempt to remove the obstacle of having to 'harmonize' these statutes."

KRS 15.520(9) was added, in its entirety, to the police officers' Bill of Rights in 2015. KRS 15.520(9) states

[t]he provisions of KRS 90.310 to 90.410, **95.450**, and 95.765[14] shall not apply in any proposed disciplinary action . . . arising from any allegation of conduct that would constitute a violation of law enforcement procedures under subsection (4) of this section. This section shall not be interpreted or construed to alter or impair any of the substantive rights provided to a city police officer under KRS 90.310 to 90.410, **95.450**, and 95.765 for any proposed disciplinary action or other matters not arising under subsections (3) and (4) of this section, including proposed actions involving alleged violations of general employment policies. To the extent that the provisions of this section are inapplicable to any proposed disciplinary action against a city police officer, the provisions of KRS 90.310 to 90.410, **95.450**, and 95.765 shall remain in full force and effect.

KRS 15.520(9) (emphasis added).

KRS 95.450 – the statute *Cromer* and *Artrip* turned to for clarification and referenced in KRS 15.520(9) above – outlines discipline for members of police and fire departments belonging to second and third class Kentucky cities. As we read KRS 15.520(9), it states that KRS 95.450 does not apply to disciplinary actions if KRS 15.520 also applies; meaning, essentially, the police officers' Bill of Rights takes priority over KRS 95.450. Also, we believe – from the language of KRS 15.520(9) – that the legislature intended that KRS 15.520 should not be read to restrict any rights allotted to officers through KRS 95.450. Otherwise, where

---

[14] We note, similarly, KRS 95.765(1)(f) states "[a]ll charges against members of the police or fire departments shall be filed with the clerk of the legislative body."

not in conflict with KRS 15.520, KRS 95.450 is still binding.[15] In other words, KRS 15.520(9) addresses the interplay between KRS 95.450 and KRS 15.520 as to a police officer's *substantive rights*. Nothing in KRS 15.520(9) prevents us from turning to KRS 95.450 for assistance in understanding the legislature's intent as to what constitutes "filing."

Despite the addition of subsection (9) to KRS 15.520 subsequent to *Cromer* and *Artrip*, we still find those cases to be persuasive and prevailing. As referenced in *Cromer* and *Artrip*, KRS 95.450(3) describes "filing" as with the clerk of the legislative body. Reading the relevant law as a whole, we believe that definition to be consistent for KRS 15.520(7)(h) as well. Based on the limited law before us, we believe the legislature intended the 75-day deadline in KRS 15.520(7)(h) to start when the charges were filed with the legislative body.

Here, Middleton received a hearing by the LFUCG Council 70 days after the charges were filed with the LFUCG Council Clerk. Therefore, timing of Middleton's disciplinary hearing did not violate KRS 15.520(7)(h).

---

[15] We note, this is consistent with *Pearce*, 448 S.W.3d at 755. "[T]he legislative intent of the police officer's bill of rights is for KRS 15.520 to work in tandem with whatever *other* administrative disciplinary procedures are in place at any particular police department; that is, KRS 15.520 is not in and of itself intended to be a comprehensive system of disciplinary procedures, rather its purpose is to assure that the disciplinary procedures adopted by a particular department 'deal fairly' with an accused police officer." Even though *Pearce* was published before the 2015 legislative changes and specifically discussed the interplay between subsections of KRS 15.520 not utilized in our analysis, we believe, in this quote, our Supreme Court assisted us on how to view KRS 15.520 through the lens of legislative intent.

Next, Middleton argues KRS 15.520(7)(j) explicitly allows the police officer defendant to argue any alleged violation of the statute directly before the LFUCG Council as a whole. He argues that the Mayor violated KRS 15.520(7)(j) when she prevented him from raising the 75-day argument to the LFUCG Council. Middleton asserts that "[i]t is the hearing authority, and *only* the hearing authority, that gets to determine 'whether the officer has been materially prejudiced.'"

> The failure to provide any of the rights or to follow the provisions of this section may be raised by the officer with the hearing authority. The hearing authority shall not exclude proffered evidence based on failure to follow the requirements of this section but shall consider whether, because of the failure, the proffered evidence lacks weight or credibility and whether the officer has been materially prejudiced[.]

KRS 15.520(7)(j).

Middleton's interpretation of this statute is stricter than we perceive it. The officer "may" raise the concern with the hearing authority. That is distinct from saying the presiding officer *must* allow all such arguments to be heard by the entire hearing authority. Further, and more importantly, this distinction is moot under these circumstances. While Middleton emphasizes the beginning of the subsection, he pays no heed to how it ends. "The hearing authority shall not exclude proffered evidence based on failure to follow the requirements of this section but *shall consider . . . whether the officer has been materially prejudiced*[.]" *Id*. We have found that the LFUCG Council held his hearing

within the statutory 75-day window; therefore, he cannot have been "materially prejudiced" by the Mayor preventing him from presenting that argument to the entire LFUCG Council.

## C.    Disciplinary Examples

Before the hearing, Middleton produced a witness and exhibit list that included proof of how the Lexington PD disciplined other officers for misconduct between 2015 and 2020. However, prior to the hearing before the LFUCG Council, the Mayor granted Lexington PD's motion to eliminate proof of other officers' discipline. The Mayor excluded 20 of his 21 examples from the hearing because they "would cause confusion and unnecessarily complicate the hearing" and were not "materially similar." She stated,

> At the prehearing conference, a question was presented of how many of the police officers involved in these disciplinary documents were "similarly situated" to [Middleton]. Argument was presented on behalf of [Middleton] that the facts comparing [him] with any other LFUCG police officer needed to be "materially similar". . . .

> It is my decision that documents and testimony concerning these PIU investigations involving instances of Misconduct or Violations of Rules of twenty-one (21) Formal Complaints involving other LFUCG Police Officers would cause confusion and unnecessarily complicate the hearing on the pending disciplinary charges against [Middleton]. Accordingly, said documents and testimony are excluded for use at this hearing.

Middleton challenges the Mayor's evidentiary ruling standard. He argues, under these circumstances, the only permissible statutory restriction to evidence is based on "relevancy" alone. KRS 15.520(7)(g) states that "the accused officer shall be allowed to present witnesses and any documentary or other *relevant evidence* the officer wishes to provide to the hearing authority[.]" (Emphasis added.) Middleton asserts the Mayor's "materially similar" standard was improper because prior punishments, while maybe not "materially similar," could still be very *relevant* to the decision maker's chosen punishment. "For instance, an underlying case could have entirely different factual and legal issues, but the [LFUCG] Council could determine that the degree of wrongdoing in that case was more or less than the alleged wrongdoing at issue before it." In short, Middleton argues this Court should reverse because the Mayor did not apply a "relevancy" standard, and his excluded examples of discipline *were relevant* although not materially similar.

However, we must acknowledge the discrepancy between Middleton's argument and our limited review. We are not factfinders, and we are not at liberty to substitute our judgment for that of the LFUCG Council or the Mayor. *See McManus*, 124 S.W.3d at 458-59 (citation omitted). We may only review the Mayor's action for arbitrariness and the circuit court's substantive determinations for clear error. *See Landrum*, 599 S.W.3d at 792; *see also Stallins*, 707 S.W.2d at

-23-

351. Although Middleton disagrees with her *application* of relevancy, the Mayor nonetheless applied a relevancy standard: the Mayor determined that the other officers' disciplinary examples were not relevant because they were not similarly situated, not materially similar, and would result in confusion and unnecessarily complicate the hearing. In other words, the Mayor's considerations *equated to a relevancy determination*. While more extensive findings would have been preferred, we cannot find the Mayor's decision – to exclude irrelevant disciplinary examples – to be arbitrary because it was based on substantial evidence. Similarly, the circuit court focused on the one example the Mayor *did allow* Middleton to present by stating, "the Mayor allowed proof to the discipline of one officer that she determined to be materially similar and similarly situated to the circumstances that led to the Charges that were filed against [Middleton]. This determination of the Mayor was a decision as to the relevance of this other police officer discipline." This circuit court finding is not clearly erroneous because it is based on substantial evidence.

Next, Middleton argues the Mayor's pre-hearing ruling prevented him from presenting all his disciplinary examples to the entire LFUCG Council, in violation of KRS 15.520(7).[16] Middleton argues the Mayor's restriction was unfair

---

[16] "Unless waived by the charged officer in writing, a hearing shall be conducted by the officer's appointing authority to determine whether there is substantial evidence to prove the charges and to determine what, if any, disciplinary action shall be taken if substantial evidence does exist."

to both himself and the LFUCG Council because her decision left the LFUCG Council "to decide a complicated disciplinary case in a void without the benefit of any structure whatsoever."

KRS 15.520(7) requires the LFUCG Council "to determine . . . what, if any, disciplinary action shall be taken[.]"  The LFUCG Council determined the level of discipline appropriate for Middleton.  The Mayor limited his disciplinary examples, but the LFUCG Council still determined what disciplinary action should be taken.  Middleton does not cite any caselaw that supports his contention that the Mayor's evidentiary limitations prevented the LFUCG Council from fairly determining what, if any, disciplinary action was appropriate.  KRS 15.520 does not require the hearing authority, the appointing authority, or legislative body, *as a whole*, to make all substantive decisions.  As such, the Mayor *did not* violate KRS 15.520(7) by limiting Middleton's disciplinary examples prior to the hearing.

### D.   First Amendment

Finally, Middleton claims LFUCG Council improperly terminated his employment for exercising his right to free speech protected by the First Amendment.  Quoting *Pickering v. Board of Education of Township High School District 205, Will County, Ill.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35, 20 L. Ed. 2d 811 (1968), Middleton argues that determining whether a public employer had properly discharged an employee for engaging in protected speech requires a

balance of interests between the employee, citizens, and the Commonwealth. Middleton argues his interests outweigh those of the citizens or Commonwealth because his messages were mostly sent while off-duty; involved "frank discussion between friends"; the police were not "impaired in any way" as a result of his comments; and regarded matters that were of public concern during the height of police accountability protests. As the messages in question were protected, Middleton asserts, the LFUCG Council should not have been permitted to rely upon them for their decision to terminate his employment.

Conversely, LFUCG argues that Middleton's comments were "sufficiently disruptive enough to constitute 'misconduct' under LFUCG police policies[.]" Middleton's "disruptive speech," LFUCG asserts, is not protected by the First Amendment.

However, issue preclusion bars the parties from relitigating this argument as the United States Court of Appeals for the Sixth Circuit already resolved the issue in *Middleton v. Lexington-Fayette County Urban Government*, Case No. 22-6040, 2024 WL 692966, at *3 (6th Cir. Feb. 20, 2024). *See Jellinick v. Capitol Indem. Corp.*, 210 S.W.3d 168, 171 (Ky. App. 2006) (citation omitted).

> Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical. The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If

-26-

> the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action.

*Yeoman v. Commonwealth, Health Pol'y. Bd.*, 983 S.W.2d 459, 465 (Ky. 1998) (citations omitted).

Two months after Lexington PD terminated Middleton's employment, Middleton filed suit against the Lexington PD and the Lexington PD Chief in Fayette Circuit Court. He raised numerous issues, including a First Amendment retaliation claim. In June 2021, that action was removed to the United States District Court for the Eastern District of Kentucky. The Lexington PD and Lexington PD Chief subsequently moved for summary judgment, which the court granted, concluding, in relevant part, the police chief was protected against Middleton's First Amendment retaliation claim by qualified immunity. *Middleton v. Lexington Fayette Cnty. Urban Gov't*, No. CV 5:21-156-DCR, 2022 WL 17253879 (E.D. Ky. Nov. 28, 2022). Middleton appealed to the United States Court of Appeals, Sixth Circuit. *Middleton*, 2024 WL 692966, at *3.

While the appeal before us today was pending, and after the parties filed their briefs here, the Sixth Circuit affirmed the federal district court in full. The Sixth Circuit, in pertinent part, found:

> This court applies "a two-part inquiry for discerning when the discharge of a public employee violates the First Amendment." *Scarbrough* [*v. Morgan Cnty. Bd. of Educ.*,

-27-

470 F.3d 250, 255 (6th Cir. 2006)].470 F.3d at 255. The threshold question is whether the employee's "speech may be fairly characterized as constituting speech on a matter of public concern." *Dambrot v. Cent. Michi. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995) (internal citation and quotation marks omitted). "If the speech relates to a matter of public concern, then the court employs the balancing test outlined in *Pickering v. Board of Education*, 391 U.S. 563 (1968), to determine if the employee's free speech interests outweigh the efficiency interests of the government as an employer." *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002).

. . . even assuming that Middleton's dissemination of confidential L[exington] PD messages and tactics constituted a matter of public concern, we conclude that his claim would still fail because his "speech" was clearly on the short end of the *Pickering* balancing test.

Although "public employer[s] need not show actual disruption of the public agency in all cases" to prevail under the *Pickering* test, *Gillis v. Miller*, 845 F.3d 677, 687 (6th Cir. 2017), the record here shows the obvious disruptions that Middleton caused. Middleton disseminated confidential information to his cousin Sarah Williams that detailed L[exington] PD officers' locations and planned response to the ongoing protests. He likewise encouraged Williams to confront the officers. [The police chief] testified that Middleton's leaks about the L[exington] PD's planned response to the protests undermined the department's operations because the L[exington] PD was forced to make tactical adjustments and risk officer safety. He also explained that Middleton's dissemination disrupted the trust and harmony existing among L[exington] PD officers. And [the police chief] maintains that if he had not recommended Middleton's termination, then the remaining officers would have viewed his inaction as an endorsement that they were free to attack one another, which would have impaired future discipline.

-28-

Had Middleton simply posted his support for racial equality on social media or joined the ongoing marches to protest the racial abuse that he endured at the L[exington] PD, his retaliation argument would have more merit. But considering the leaks of confidential information and associated operational harms discussed above, we are unpersuaded by Middleton's argument. [The police chief] was not required to "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *See Connick v. Myers*, 461 U.S. 138, 154 (1983). Accordingly, the district court did not err in granting summary judgment on Middleton's First Amendment claim.

*Middleton*, 2024 WL 692966, at *8-9.

Further analysis of that issue is barred by issue preclusion because Middleton's First Amendment arguments are the same now as those the Sixth Circuit previously adjudicated; the First Amendment argument was "actually litigated"; the issue was "actually decided" in the federal action; and, the resolution of the First Amendment claim was necessary to the Sixth Circuit's judgment. *See Yeoman*, 983 S.W.2d at 465. Therefore, Middleton's First Amendment argument is barred.

## CONCLUSION

In light of the foregoing, we AFFIRM the May 2023 Fayette Circuit Court Order affirming LFUCG Council's decision to terminate Middleton's employment.

ALL CONCUR.


BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEES:

Keith A. Sparks                Charles D. Cole
Bardstown, Kentucky            Derrick T. Wright
                               Lexington, Kentucky